UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HOWARD BROWN AND                                                                    PLAINTIFFS
BRANDON SIBLEY

V.                                                         CIVIL ACTION NO. 3:23-CV-127-DPJ-FKB

CHOCTAW RESORT DEVELOPMENT                                              DEFENDANTS
ENTERPRISE, ET AL.

ORDER

Defendants seek dismissal of the claims brought by pro se Plaintiffs Howard Brown and Brandon Sibley for failure to exhaust tribal-court remedies. Mot. [6]. As explained below, tribal-court exhaustion is required, so Defendants' motion is granted in part. But rather than dismiss Plaintiffs' claims, the Court will stay this case while Plaintiffs exhaust.

I.      Facts and Procedural History

This is the second lawsuit Plaintiffs have filed against these Defendants challenging a mask mandate the Mississippi Band of Choctaw Indians (MBCI) imposed on visitors to the Golden Moon Hotel and Casino. In October 2021, Plaintiffs tried to enter the Golden Moon, an establishment located on tribal lands, but were denied entry because they refused to abide by MBCI's mask mandate. Plaintiffs sued MBCI, Choctaw Resort Development Enterprise, MBCI Chief Ben Cyrus, and Choctaw Resort Development Enterprise CEO William Sonny Johnson in this Court in May 2022.

That original suit asserted claims for (1) violation of Plaintiffs' due-process and equal-protection rights under 42 U.S.C. § 1983, (2) conspiracy under 42 U.S.C. § 1985, (3) common-law conspiracy, (4) violation of 42 U.S.C. § 2000a, and (5) negligent infliction of emotional distress. *See Brown v. Choctaw Resort Dev. Enter*, No. 3:22-CV-256-DPJ-FKB ("*Brown I*"),

Compl. [1]. The Court dismissed the case without prejudice on November 7, 2022, for failure to exhaust in tribal court. *Id.* at Order [50].

After that dismissal, Plaintiffs filed a Choctaw Tort Claims Act *notice* with the MBCI Attorney General. The MBCI AG denied the claim—finding that it was time-barred—and Plaintiffs never challenged that ruling in tribal court. Plaintiffs instead filed this case on February 17, 2023. Their new Complaint drops the § 1983 claims but otherwise asserts the same causes of action against the same Defendants as in *Brown I*.

Defendants moved [6] to dismiss the new suit, arguing that Plaintiffs still failed to exhaust tribal-court remedies as required by *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985), and *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9 (1987). Plaintiffs responded in opposition [9], and Defendants timely replied [10].

II.     Analysis

In its order dismissing *Brown I*, the Court concluded that Plaintiffs' claims were subject to the tribal-court-exhaustion doctrine, meaning Plaintiffs needed "to exhaust their remedies in the tribal judicial system" before suing in federal court. *Nat'l Farmers*, 471 U.S. at 853; *see Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 32 (1st Cir. 2000) ("Civil disputes arising out of the activities of non-Indians on reservation lands almost always require exhaustion if they involve the tribe." (citing *Iowa Mut.*, 480 U.S. at 18)). That order is incorporated here.

Defendants argue that the *Brown I* holdings require dismissal of Plaintiffs' new suit because they never sued in tribal court. In their response, "Plaintiffs concede they filed no documents in MBCI's tribal court" after the *Brown I* dismissal. Resp. [9] at 1 (capitalization altered and emphasis removed). But they say that doesn't matter because they "satisfied all of

2

the conditions set forth for exhausting [their] administrative remed[ies]" under the Choctaw Tort Claims Act (CTCA). *Id.* ¶ 9. In other words, Plaintiffs suggest that satisfying the CTCA's exhaustion requirements for filing suit in tribal court exhausts their claims under the federal tribal-court-exhaustion doctrine.

That argument fails because the two exhaustion requirements are different. Under *National Farmers*, Plaintiffs must take their claims to tribal court before suing in federal court. 471 U.S. at 857. That requires exhausting claims through "the entire tribal court system." *Iowa Mut.*, 480 U.S. at 16–17. And "[a]t a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *Id.* at 17 (holding that "[u]ntil appellate review is complete, the Blackfeet Tribal Courts have not had a full opportunity to evaluate the claim and federal courts should not intervene").

By contrast, the CTCA describes what must happen before suing *in tribal court*. As Plaintiffs note, Choctaw Tribal Code section 1-5-10 states:

> No Court of the Mississippi Band of Choctaw Indians shall have jurisdiction to entertain any civil suit or action . . . against the [MBCI], the Tribal Council, a Tribal government agency or instrumentality, or any Tribal official or employee . . . unless the plaintiff in such action has first exhausted Tribal administrative remedies in an effort to correct the matter complained of . . . .

Pl.'s Resp. [9] ¶ 1. The code then describes those steps, which begin by filing "a written complaint with the Tribal Chief." Choctaw Tribal Code § 1-5-10(2). Once the claim has been administratively exhausted under section 1-5-10, the party may sue in tribal court. The notice is not the final step in the "tribal court system." *Iowa Mut.*, 480 U.S. at 16.

That point appears again in another Choctaw code provision Plaintiffs cite. Choctaw Tribal Code section 25-1-6(1) provides a one-year statute of limitations for filing a notice of claim, which is a prerequisite to filing suit in tribal court. Section 25-1-6(2) then says: "*No lawsuit shall be filed upon any such claim until* and unless the six (6) month administrative

3

review period created by § 25-1-6(1) shall have expired and the other administrative exhaustion requirements of § 1-5-10, Choctaw Tribal Code, have been satisfied." (Emphasis added). The "claim" and the "lawsuit" are different things.

Here, Plaintiffs concede that they stopped pursuing their tribal remedies after the MBCI AG denied their initial claim. Pls.' Resp. [9] at 1. They never went past MCBI's administrative-review procedure and never filed a "civil suit or action" as Choctaw Tribal Code section 1-5-10 permits. So, as before, they never fully exhausted their claims. *See Iowa Mut.*, 480 U.S. at 16–17.

Plaintiffs do however argue that exhaustion became futile once the MBCI AG concluded that their claims were time-barred. Pl.'s Resp. [9] at 5. True enough, exhaustion is not required when it "would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction." *Nat'l Farmers*, 471 U.S. at 856 n.21. For example, in *Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes of Texas*, the tribe had no tribal court, so the Fifth Circuit found no way to exhaust. 261 F.3d 567, 572–73 (5th Cir. 2001) (affirming district court's ruling that exhaustion was not required before proceeding in federal court).

But here, Plaintiffs could have challenged the statute-of-limitations finding by suing in tribal court and then appealing if necessary. *See Iowa Mut.*, 480 U.S. at 16–17. Indeed, Plaintiffs argue in this Court that they "clearly warned the Attorney General in their letter (Exhibit I) about the tolling that was necessarily paused for the duration of the action in Federal District Court, and she freely chose to relinquish jurisdiction over Plaintiffs' claims in Choctaw Tribal Court." Pl.'s Resp. [9] at 6; *see also id.* ¶ 10 (arguing that "the Tribe ignore[d] the time Plaintiffs spent in District Court").

4

That's an argument Plaintiffs should have pursued to the highest tribal court. *See Iowa Mut.*, 480 U.S. at 16–17; *see also Archambault v. United States*, 641 F. Supp. 3d 636, 651 n.8 (D.S.D. 2022) (finding failure to exhaust and holding that "[w]hether . . . statute of limitations applies or if there might be tolling of the claim is for the tribal court to decide").

Plaintiffs offer other arguments in their response; some address the merits, but none overcomes the exhaustion problem. For example, they say their claims must be decided in an Article III court because federal questions exist. Pls.' Resp. [9] ¶ 16. But as explained in *Brown I*, the United States Supreme Court requires full exhaustion in tribal court even when federal questions create concurrent jurisdiction. *Brown I*, Order [50] at 3 (citing *Nat'l Farmers*, 471 U.S. at 857).

So the final question is whether to dismiss Plaintiffs' claims without prejudice or to stay this case. Where a plaintiff might "later be 'barred permanently from asserting his claims in the federal forum by the running of the applicable statute of limitations,'" a district court "should . . . stay[], not dismiss[], the federal action pending the exhaustion of tribal remedies." *Sharber v. Spirit Mountain Gaming Inc.*, 343 F.3d 974, 976 (9th Cir. 2003) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 203 n.7 (1988)). Given the passage of time since the events leading to this lawsuit, the Court concludes that the safer route is to stay rather than dismiss Plaintiffs' claims.

III.   Conclusion

The Court understands Plaintiffs are frustrated because they want to move past these hurdles and jump straight to the merits. But the United States Supreme Court requires full tribal-court exhaustion, and nothing in Plaintiffs' response suggests that they have reached that point. Their own admissions indicate that they haven't. Under those circumstances, no hearing is necessary. Defendants' Motion to Dismiss [6] is granted to the extent that Plaintiffs must fully

exhaust their claims in tribal court before they may assert them here.  Plaintiffs' Motion for Hearing [11] is denied, and Plaintiffs' Motion for Summary Judgment [13] and Defendants' Motion to Stay [14] are denied as moot.  This case is stayed pending trial-court exhaustion.  Plaintiffs may move to lift the stay after they have fully exhausted their claims in tribal court.

**SO ORDERED AND ADJUDGED** this the 18th day of October, 2023.

s/ *Daniel P. Jordan III*  
CHIEF UNITED STATES DISTRICT JUDGE